Your Honor, Stuart Phillips, representing Anthony Johnson, seated with me at the table. We have two overarching issues that are at play in this case. The first being, of course, the issue of the arrest of Mr. Johnson, which we feel was violative of his Fourth Amendment rights. And the second being the constitutionality of the special malicious prosecution statute that Washington has enacted as its stated purpose by the legislative finding in order to protect law enforcement. And the third issue is that there is an issue of mootness on that, Your Honor. I do agree. That was an issue that in the underlying summary judgment motion we had moved for a declaratory judgment that this statute is unconstitutional. And that was denied. And our appeal from that specifically appealed the denial at summary judgment of that. So I think there are – I know you had appealed it, but if they – my understanding was the claims were subsequently dismissed. So spend your time on whatever you like. I'm not very interested in the malicious prosecution, just speaking as one judge, because I think it's probably moot and we should – we can't rule on it. I think there's certainly a very good argument for that. And I'll take the Court's wise counsel. And I would like to reserve five minutes for rebuttal, if necessary. Now, the facts of – concentrating on the arrest, the facts of this case and the arrest are basically undisputed. Mr. Johnson was tape recording some friends at a public park in Sequim. The police chief drives up in uniform, on duty, in his patrol car, rolls his window down, is sitting in the parking lot of the public park, and is doing something, either on the radio or perhaps about to make a telephone call. That is somewhat unclear. Mr. Johnson begins filming the police chief from a distance of 50 feet or so, and the police chief sees him, sees that he's filming him, sees him coming toward him, pointing a camcorder at him, and admits that. It's undisputed that the chief saw that he was coming and knew that he was being recorded by Mr. Johnson. Mr. Johnson walks up to the rear of the police cruiser. The chief accosts him, rolls down his other window, demands to see the videotape, which we think would constitute a search. Becomes irate, says that he's been illegally recorded, and then arrests Mr. Johnson with some use of force that we think would be, not entirely appropriate for someone whose only crime, allegedly, was tape recording the police chief sitting in his car. The qualified immunity standard is what the chief has relied upon in his motion for summary judgment, and the magistrate judge found, we think, erroneously that the law was not clearly established as to this not falling within the purview of the Washington Privacy Act, and for... Let me ask you this, just to get right to the, to cut to the chase on it. Please. I'm certainly familiar with the Flora case, as you, and I know you must be familiar with the Alford case. Yes, I believe you're on the panel for that. The majority of the panel supported a 1983 claim based on a, on a arrest after a motorist taped the policeman who was giving him a citation. Correct, Your Honor. And, and Flora itself involved a taping of, of a police arresting somebody. But the, the magistrate judge or the district court here said Flora was distinguishable because in this case, Mr. Johnson was taping the policeman when the policeman was in his car. He wasn't arresting Mr. Johnson at the time. As I understand it, he claims he was at the park to do surveillance about a runaway or what, whatever. It's a little unclear to me exactly what he was doing at the time he was taping, but he certainly wasn't making an arrest. Correct. He wasn't interacting. So it, it seems, and I'll just put my concern forward, it seems that it's at least unclear whether Flora is applicable. That is, the Washington appellate courts have not spoken to the precise situation involved here. And then a judge initially upheld the arrest, I guess, before he was dismissed. So if it's that unclear, why wouldn't a qualified immunity be, be applicable if there was a violation or maybe there's no violation? I mean, there's no violation, I guess, depending on what Flora, what Flora means. There may or may not be a Privacy Act violation. Your Honor, I, I would begin with saying that the case law is clear that a, a probable cause determination in an underlying criminal case is not ipso facto determinative of the objective reasonableness standard being met in a 1983 action. But, but is it relevant on a qualified immunity issue? Well, Your Honor, it, the answer would have to be it depends. The, the issue of qualified immunity is whether under the facts known to the officer at the time of the arrest, a reasonable officer under an objective standard would have felt that the facts and circumstances justified the arrest. So to the extent that something happened after the fact, and I would point to the Alford case where the officers attempted to justify their actions by virtue of a conversation they had with a deputy prosecutor after the arrest. But again, Alford, Alford involved a recording of the officers giving Mr. Alford a citation. Correct, Your Honor.  Was it a citation or an arrest? An arrest. Domestic violence? Yes, Your Honor. So, so there they are, they're, they're confronting someone they think has violated the law, and they're saying whatever they're saying. And the person's taping it. And as I understand it, Flora says when the policeman's taping their own act of arresting, when the policeman's arresting someone, if that person tapes them secretly, they're doing it on a public street in that case. You know, in Alford, it was on a highway. Correct. That there's no expectation of privacy. But is there any Washington case, one way or the other, that, that says that in the case of Mr. Johnson, skateboarding, you know, in the park, that the police have no expectation of privacy under that statute? Is there any Washington authority? Your Honor, the issue has never been directly addressed that I can find. However, the, the principle involved in this case has been addressed on numerous occasions by Washington courts. And we're, we're not contending that Flora in and of itself is dispositive of this case, or even that Alford v. Hainer is dispositive of this case. But rather, the principles that underlie the Privacy Act have been interpreted by the Washington courts and by the district court with Judge Dwyer in the Fordyce v. Seattle case. And the principles there are the ones that clearly establish, we feel, that anything that is open or in public is not private. State v. Fafford, which we had cited in our brief. The Fordyce case, which involved reporting to people at a demonstration who were not interacting with the videographer there. We also have, in our brief, we cited numerous cases that state, under the Washington Privacy Act, videotaping is not covered at all. So the act of videotaping was clearly not a violation of the Privacy Act because it's outside the ambit of. Does the camcorder record sounds as well? It does, Your Honor. We've tried to delineate between the video part and the audio part. The video part is clearly not covered. As to the audio, although here the interaction of the police was not directly with Mr. Johnson, that's not the dispositive issue is, did the officer have a reasonable expectation of privacy in whatever it was he was doing? Well, let me give you a hypothetical. And I don't know that this is the way it was actually happened. But let's assume for a minute that we were to credit Officer Nelson, or Police Chief Nelson, if he says, at the time this recorder was running on me, I was trying to contact dispatch at the police station to get some guidance about some law enforcement issue. You know, that's what he says. Assuming he said that. I'm framing this as a hypothetical. I'm not saying that's your record. Certainly not. But in that case, would a citizen have a right to record the police communications with their dispatch office? Would someone have a right to do that? Your Honor, I will turn the hypothetical back on you. I'm sure you can compel me to answer that. The way this normally works is... But go ahead. Allow me to restate that, Your Honor. I just made the kind of answer. Imagine that a person is standing on a street corner, talking on his cell phone to someone, saying that he is planning on, I almost hate to use this, but that he's planning on committing some act of terrorism or robbing a bank or something like that. A police officer or even another citizen walks up next to him and overhears this conversation. Well, I would grant, I would grant, so I'll be willing to answer your question if you'll answer my question. If somebody records a public statement on a street corner, I don't think that would be a violation of the Privacy Act. I think that there are precedents that say that it covers private statements, not public statements. But still, going back to my question, now I hope you'll reciprocate. I shall, Your Honor. If the policeman is talking to dispatch, which normally I don't think the public is hearing what the police is saying, but maybe I'm wrong, the police is talking to their police office, do they have an expectation that that's a private conversation? Your Honor, I think they certainly would have an expectation that that would be an official conversation. But as to the privacy of it, let, I think it's important not to, not to confuse the, I would say the normal or average definition of private versus the Privacy Act's definition of a private conversation. Under the Privacy Act, for it to be private, there has to be a reasonable expectation of privacy. And the case law has defined that reasonable expectation essentially using the standard under Fourth Amendment jurisprudence. If it's open, if it's in public, one case even said that if it was in public where it could possibly be overheard by passers-by. Well, here Officer Nelson's in a parking lot of a park. And as I understood it, he had his windows rolled up first, and then the, Mr. Johnson was approaching him with a camcorder and he rolled down his window and said, what are you up, what are you doing, or something like that. No, Your Honor, I believe the record is that he had his window down for almost the entire time, and that when Mr. Johnson came up to the car, he rolled down the other window to address Mr. Johnson. I see. And that's the factual distinction that, that we feel makes this not a reasonable expectation of privacy, because sitting on his shoulder when he had his window down? In the record, there was some indication that someone drove up and parked next to him. Well, he was parked on a public street next to a skateboard park, right? Correct, Your Honor. The same way the camcorder. Anybody walking by could hear what he was saying over the radio. Anybody. Yes. So just because the camcorder comes into play doesn't make the conversation any more private. That's our contention. Right. Well, you're not. Similarly, if it were a criminal. Counsel, there's mention in the briefs, and it's also in the record, and I'd like to know, that anyone can go to Radio Shack and buy a scanner that will pick up dispatch conversations between the police and the... That, that is, that is a contention, and in fact, I pulled the... The evidence of that? Evidence that people could go buy a scanner? I don't believe that was in the record, Your Honor. There was a contention in the defendant's motion for summary judgment that the recording of this would potentially have violated the Federal Communications Act, but I, I note that that act actually makes it not unlawful to, to intercept or record or even try to intercept police and fire radio communications that are readily accessible to the general public. I, why did this go, I just, what the Washington procedure was, or the county procedure, why did it go to a judge to assess probable cause after the arrest was made? I believe there's a requirement that once they're arrested, they have, I forget the time limit, but 48 or 72 hours to bring the person before a magistrate. So the magistrate said okay, but then the police dismissed him on the charge of violating the Privacy Act, but then later he was charged with attempted violation? I believe that is correct, Your Honor. Privacy Act. And then that was... Let me ask a procedural question. Yes, Your Honor. The motion that was made by the defense was for qualified immunity. Your brief asked that we not only reverse the qualified immunity determination, but fine for you on your 1983 claim. What's the basis for that? There were competing, sorry, Your Honor, there were competing motions for summary judgment. And in our motion, we asked for a finding of liability. And that was denied. And that's... That's so clear on, I mean, does it make any difference what, in fact, the police chief was saying over the dispatch radio? Because that is a disputed fact. And you're, Your Honor, you're entitled to a grant of summary judgment because it doesn't matter what he was saying. He had no expectation of privacy over it. If it's not private, it's not private, Your Honor. If he had wanted to make it private, quite frankly, all he had to do was roll up his window or turn on his car so the motor was running or drive away or tell Mr. Johnson, stay away, I'm on the radio. Well, then you would, you concede that sitting in the parking lot of the park, I thought it was a parking lot of a skateboard park, not a thoroughfare. Am I right? It is the parking lot of the park. So he's in a parking lot of a park. Public park, Your Honor. It's a public park, which is a public forum. He's in the parking lot of it. And you're saying if he had his windows up or he turned on his motor so the engine was making noise, that then he would have an expectation of privacy? I think not with his engine off and one window down or something. If he had done either of those things or both of those things, then there would, I think, be more of a dispute as to whether he had a reasonable expectation of privacy. The fact that he took, not only took no steps to secrete or secret himself from public overhearing, but actually opened himself up to being overheard by rolling down his window, under the facts of this case, do make a difference. Had he done the other things, then I think it would be a closer call, because then, and that might even require submission to a jury to determine if he had taken steps that a reasonable person would consider as justifying an expectation of privacy. Okay. Thank you. Do you want to save some time? Yes, Your Honor. I'll reserve the rest of my time. Judge Woodruff, could I just ask him, give him a little extra time. I want to ask him to address the mootness just in case. Right. I think I'd better do it now in case the government wants to respond. I turned you off of your mootness issue, but in one minute, could you tell us why you think we should review the malicious prosecution counterclaim constitutionality on the theory that, I guess, they might be refiled or something? Two reasons. First, it, of course, can be refiled. And second, I suppose it's a well-known exception to the mootness doctrine that it's capable of repetition, yet evading review. And in this case, well, you know, the procedural aspects of this case were somewhat convoluted that we actually came up before the court once, and at that time it was noticed that this counterclaim had not been disposed of. So we simply went back to the district court, entered a dismissal, and then brought the case back up a second time. I see. So there hasn't been, you know, there certainly hasn't been anything on the merits on the counterclaim other than the summary judgment. And there was also a 12B6 motion that we had originally filed that was denied without prejudice. Okay. Thank you. Good morning, Your Honors. Ray Cox for the City of Sequim Defendants. That includes the City of Sequim, the mayor of City of Sequim, and Chief Nelson and John Doe officers. I guess at the end of the day what the plaintiff is requesting from this court is a ruling that a police officer in the performance of his public charge, his duty, and I digress a little bit, police officers are a little bit different from other public servants. Their place of duty is in the public. They have no other place other than the police station for them to conduct their business. The plaintiff wants the court to find that a police officer in a public park, in his parked car, engaged in communication either by cellular phone or through radio dispatch, communication which is ongoing, has no expectation of privacy, that those communications will not be intercepted by members of the public. The City of Sequim would contend that that defies common sense. The facts in this case that are relevant to this appeal are undisputed. The chief was in that park for purposes of a police investigation that involved a different matter. It did not involve Mr. Johnson. Mr. Johnson was the aggressor in this incident. He approached the chief. He came to the chief with a video camera that recorded both picture and sound. Now, one of the holdings in Alford or a statement that was contained within Alford is that taping of a private conversation is illegal. It still states that in Alford. The Washington Privacy Act still states taping of a private conversation is illegal. It would do a great disservice to a police force to say that a police officer engaged in his public duty in a car with one window rolled up and one window rolled down, listening to communication or initiating communication with his police station. It's some of the police then just stay on the radio. They can never be videotaped in the course of their duties. It's not videotaping, Your Honor. It's not the pictures. It's the audio tape. What's going on in that when there's somebody who's videotaping an arrest or something like that? There's a long line of case law, Your Honor, that talks about the police putting themselves in a position where there is no expectation of privacy. You went through all those cases, whether it be Alford or Lewiston or Floor, in a public place such as on a thoroughfare where the police initiate the contact with the individual that has initiated the recording. That's where there's no expectation of privacy. In this instance, Chief Nelson had nothing to do with the plaintiff until the plaintiff initiated the contact and the recording. So I guess it seems to me it's somewhat in dispute whether, in fact, the police chief was actually engaged in a conversation. The videotape that was provided, if there was speaking on it, it's completely inaudible, whereas there's some conflicting – some testimony that's conflicting with that. Well, I'm not sure what testimony you're referring to, Your Honor. The undisputed evidence of the police incident report that was submitted to Judge Arnold. The evidence in the police incident report? That could be contradicted by the videotape itself, correct? I don't believe so, Your Honor. The police incident report that was prepared by Chief Nelson specifically referred to the fact that his police radio was in operation at the time that Mr. Johnson was recording. Right. But just because he said it doesn't mean it's true. But it does mean that it's undisputed evidence in the lower court, Your Honor. Well, except that the videotape doesn't have him even talking. Have you seen the videotape? Yes, Your Honor. It doesn't have him talking, right? That's correct, Your Honor. That's why you're going one step too far. We're talking about the initial information that provided a probable cause for Chief Nelson to make the arrest, whether he had a reasonable basis to believe that the communication that he was engaged in was intercepted by the plaintiff. And was that interception in violation of the current law, the Washington Price Act? If I'm going too far, let me take you one step back. Yes, Your Honor. What communication was he engaged in? Communication with his dispatch. Okay. But the tape doesn't show him talking. So how was he communicating? I think you're asking me to prove a negative by what's not on it. I think as I'm perceiving the problem, it is Judge Wardlaw's question raises the question whether there's a genuine issue of material fact by virtue of the tape itself, not recording a statement of Officer Nelson. It raises an issue of fact whether he was engaged in communications with dispatch when Mr. Johnson approached with the video recorder. And whether, if so, it's material to this argument in the outcome of the case. Okay. I understand that. When you say Judge Wardlaw, you're referring to the magistrate decision. Judge Wardlaw. Oh, I'm sorry, Your Honor. It's referring to my question to you right now, which is, is there in the record facts that contradict whether or not the chief was actually engaged in communication, and if so, is that material to our decision? To the first part of the question, no. To the second part of the question. Okay. Why? I mean, we're going to have to get to the dispute. Why no? I'm telling you no because I'm not aware of any evidence in the record that indicates that the chief was not engaged in communication with his police department. The only evidence in the record is the chief, in fact, was engaged in communication with his police department on a matter that did not involve Mr. Johnson. What did he say, actually? Did he just say the radio was on? That's correct, Your Honor. And that communication was flowing through him. Okay. Let's say he's got his radio on and he's getting intermittent bursts of information from the police station. Does he have an expectation of privacy in that? In the context in which the police chief Nelson was, yes. Okay. Now let me ask the question a different related question. Let's say he says the radio was on and he was getting information like that intermittently, but in the record there's a videotape and it has audio, but it doesn't contain any transmission from the police station. Does that raise an issue of fact that suggests the case should go to a jury or a trier of fact who could hear what Officer Nelson said, hear what Mr. Johnson says, and then decide was he engaged in these conversations, assuming it's material, assuming that that would have a privacy component to it? Well, I don't necessarily disagree with that, Your Honor, but if this Court viewed the videotape, you'll notice that there is a large gap in the tape. And so if you're asking me if the tape shows that there was no audio transmission, but it temporaneously covered the same period of time in which the chief is indicating that that communication did occur, would that raise a material issue of disputed fact? I would agree it would. But that videotape in itself is incomplete for purposes of raising an issue. The videotape doesn't show nonstop action of the police. That's correct, Your Honor. But what I hear you saying is where I was trying to go. Maybe I was far ahead of you on it. What I hear you saying is that really doesn't matter because the reason the chief could arrest Mr. Johnson was because he came with a machine capable of recording and just because that if the radio was on and there was anything coming out of that radio, that's sufficient to constitute a violation or to make him have reasonable cause to believe that there was a violation. Actually, both of those, Your Honor. That's sufficient for purposes of the Washington Privacy Act with respect to making it illegal to intercepting private communication. And it also suffice for giving Chief Nelson probable cause to stop on three separate occasions, request from the plaintiff, let me see your tape so I can determine whether you improperly recorded or illegally recorded the conversations that were going on within my squad car. When the plaintiff refused three separate occasions to turn it over, attempted to leave, that was led to Chief Nelson placing the plaintiff under arrest. The probable cause that this recording device that had no, and there's a lot of undisputed evidence that was before Judge Arnold when he made his decision, that the video camera recorder, the recording was going on, but it didn't have a recording indicator light to let anyone know whether recording actually was going on or wasn't going on. That was the reason why Chief Nelson at the site said, just let me see your recording to see whether you recorded any of the audible sound that was taking place within my squad car. When that refusal came, that's when Chief Nelson placed the plaintiff under arrest. I'd like to address some of the other issues that the plaintiff has brought up on appeal, namely the Monell claims with respect to the city of Sequim. I think Judge Arnold addressed all the issues in dismissing under any possible theory that the plaintiff would raise against the city of Sequim, talking about that the actions of the police, whether it be the sheriff of Clallam County or Chief Nelson, just because they are, in fact, the policymakers, there is no evidence of a policy that was dictated or approved of by the city of Sequim that was the moving force that caused any potential constitutional deprivation. The record is completely devoid of any evidence of any policy. What about the argument about failure to train? How do you respond to that argument? The argument, as I understand it, is, okay, assuming that an act of a policymaker doesn't show a policy or an act of a police chief doesn't show a policy, can the city be liable for not having training about what the Privacy Act means? Well, what ñ I guess that may depend in part upon what we think of what the Privacy Act means, but assuming there's a Privacy Act, that there wasn't cause to arrest under the Privacy Act, could the city be liable for not training the police chief? Well, there's two aspects of that, Your Honor, and first I'll be very brief with respect to the first. The first is that the record is completely devoid of any issue of any inadequate training program. The only thing that's contained within the record are the documentations that the city of Sequim put in with respect to these Chief Nelson's compliance with RCW 1093.020. The issue with respect to inadequate training was raised by a declaration that was submitted by a purported police procedure expert, a Mr. Alan Baxter. Part of my motion at the trial court level was to dismiss or to strike that belated declaration because, one, it was submitted after the close of discovery. Two, it was submitted in contravention to CR 26 laydown disclosures. Three, it was ñ it expressed opinions that were not provided pursuant to any discovery interrogatories that we propounded. And four, when we took the deposition of Mr. Baxter, he had no opinions whatsoever. Judge Arnold granted my motion to ñ for summary judgment. That declaration was not part or not considered by the court. With respect to the actual issue of can inadequate training or the failure of the city to provide training to Chief Nelson. Did the court make a ruling excluding that evidence? Your Honor, the specific ñ Didnít address it. The specific ruling, as Judge Arnold, as youíll see, heíll say ñ he just listed the things that he considered. There was no specific ruling that he was striking that ñ that declaration. But even reading the declaration in and of itself does not provide the plaintiff any relief with respect to showing that there was any inadequate training. Canton v. Harris does say that an inadequate training program may provide the basis for a section 1983 or a Monell claim against the municipality. However, Canton specifically spoke about a deficient training program that the municipality either had knowledge of or should have known was causing constitutional deprivation. And Canton language, it specifically says that it would ñ it would trigger municipal liability if it applies over multiple officers in multiple instances. There is no evidence of any type of deficient training that would trigger municipal liability under the standards set forth in Canton. With respect to the ñ The fact is that there is no training program at all on this Privacy Act issue at the police department. So you have no ñ there is no training on the Privacy Act. Your Honor, I know the ñ the city of Sequim Police Department manual requires its officers to be versed in the law. And at the exact contours of any particular law, I'm sure it fluctuates. I can't tell this Court that there is a specific training program on the Privacy Act. That's not a matter that's ñ that was before the trial court record. The thing to ask is that it seems like there are a lot of cases where the police have made wrongful arrests under the Privacy Act. And, you know, we have from Washington. So I'm just wondering whether ñ I don't know if I would characterize them as a lot. I know the law has been ñ has been growing and has been changing. And the expectations of what police officers can do pursuant to that act has evolved and has been involved because the courts have gotten involved in defining the contours of the right. That flows right into the issue of qualified immunity. First, the finding out whether ñ according to Saussure, whether a constitutional right is implicated. Clear are the other areas. A seizure involved here. The next step is, was the contours of that constitutional right ñ was it clearly enunciated? Was it clearly established at the time of the incident? We would ñ we would posit to this Court that, as Judge Arnold indicated, that police officers are constantly placed in the position of making instant judgments. Often those judgments are dictated by specific statutory or case law. The nuances of case law interpreting the WPA, the Washington Privacy Act, are sufficiently fact-based to preclude the plaintiff's claim that he had a clearly established right. That was the state in ñ in 2000. And, in fact, there is no Washington case which has indicated that a police officer inside his vehicle, in radio communication with his department, is subject to having those communications intercepted by any member of the public. You know, I think you may have slightly misspoken at the start of this line of argument, when the first question under Saussure is not, is there a constitutional right involved? You said there is a seizure. The first question is, is there a violation of a constitutional right? So that's really the first issue I think under Saussure we look at. Was there an arrest without probable cause, which is a seizure? But the question is, was there cause under the Privacy Act to arrest? If we think there was cause to arrest under the Privacy Act, if your theory was fully accepted, I think under Saussure we'd say there's no violation. There's no Fourth Amendment violation, and that's the end of it. But if we think there was a Fourth Amendment violation, then we go to the second prong of Saussure to ask, was the right clearly established? And at least that's what I think is the framework of analysis. So on the first question, I had understood the position of Scrimm to be that there was no unlawful seizure because there was probable cause to arrest. That is correct, Your Honor. That's what the police chief thinks. That's what the first judge thought. It's not what, I guess, why did the second judge, Judge Kunauer, why did he, and not District Judge Kunauer, but the other Judge Kunauer, why did he toss this out? Did he give reasons? Yes, he did, Your Honor, and I think the actual memorandum of opinion was improperly submitted to this court on appeal, and we've noted that it violated Circuit Rule 36-3. But if the court is asking for me what my opinion of the judge's ruling is, I think the judge misconstrued the scope of the issue of what constitutes private communications. I think the judge thought that the public location, the nature of it, precluded any expectations of privacy. Who was the first judge who said it was okay? It was a magistrate judge. A magistrate judge in Kitsap County? Yes, Your Honor. Okay. Could you address, at least in a minute, the mootness issue? Assuming, if Mr. Johnson prevails here, I think the malicious prosecution claims are obviously dead and gone. If Mr. Johnson loses, though, and there's a qualified immunity upheld or a determination of no violation at all, does he have to worry about the malicious prosecution claims being refiled? And if so, are they not really moot? Is his challenge to them not moot? Well, Your Honor, I believe that there is no justiciable controversy for this Court to decide with respect to the statutory provisions of the Malicious Prosecution Act. That cause of action was dismissed without prejudice. If this Court is asking me, and I will represent that the attorney representing Clallam County indicated he'd be more than happy to change that dismissal from without prejudice to with prejudice, the city of Sequim would do likewise. I mean, we have no intention of pursuing Mr. Johnson probably because of the mootness of that action. You know, it's moot in the sense that it's over for now, but I think he does have a right, as his lawyer argued, to challenge it possibly if it's capable of repetition but evading review. So you're saying that the government entities, the defendants are basically stipulating that they don't intend to refile those charges? That's correct, Your Honor. Or seek civil redress. All right. Thank you, counsel. Hold on. Four seconds. We'll give you a couple minutes since Judge Gold took up your time. Thank you, Your Honor. All right. I was hoping, I knew that, I suspect that Judge Wardlaw would kindly give you extra time since I preempted your rebuttal time with my mootness question.  One, I don't think it's a good idea to use the word, First, in addressing the municipal liability issue, I believe that the excerpts of record make clear what happened with the expert witness. And I shan't belabor the point on that. I will note, of course, as the Court pointed out, that the motion to strike Mr. Baxter's opinion was not granted. It's not listed nowhere in the order from Magistrate Judge Arnold. Is there any indication that he did not consider it? And there was no cross-appeal filed by the city on, I guess they would have to say that it would have been denied sub silencio, but in actuality, I suppose there was no ruling on that whatsoever. The municipal liability, as the Court indicated, is premised on the do-it-yourself training program, and that's the Sequim Police Department Policy 87-501. Dear police officer, it's up to you to know the law. Thank you. That, we feel, is deficient. And I will note, in fact, that on this self-training program, in the Alford v. Hainer case, it was mentioned that the Flora opinion on the Washington Privacy Act was reported in the Law Enforcement Digest. So it was out there. The other issue ---- If I write that Flora is an intermediate appellate court, it's not a State supreme court? It is, Your Honor. However, in this case, it's the division that covers Clowen County. I realize that. But has the State supreme court ever ruled directly on the question of a policeman out there? They have not ruled on it directly, Your Honor. However, in State v. Clark, which is a Washington supreme court case, 916 Pacific 2nd 384, a 1996 case, in discussing the contours of the Privacy Act, the supreme court cited Flora with approval and, in fact, specifically referenced the holding that the police officers did not have the expectation of privacy. Flora is, from the Court of Appeals, that covers Kitsap County? And Clowen County. That division? Yes, Your Honor. It's the highest authority, unless the supreme court says something different? Correct, Your Honor. Another factual point that I should make is on Chief Nelson's awareness that it was being recorded. In the excerpts of record at page 11 is the arrest report from Chief Nelson. And a few quotes from that are, I think, dispositive. Suspect Johnson was approximately 75 feet west of my location. I saw that Suspect Johnson was pointing a video camera at me and appeared to be recording me. I paid no attention to the fact that Suspect Johnson was recording me, as I am a juvenile. And it goes on from there. So he was obviously aware of the fact that he was being recorded. Additionally, I do feel the need to correct a statement by Mr. Cox. The events were the Chief rolled down his passenger window, said, what are you doing? Mr. Johnson said, been recording. There was then an exchange between the two where the Chief demanded to see the videotape, and Mr. Johnson asserted, it's a private tape, you don't have any right to see it. On the excerpts of record at pages 19 through 21, Mr. Johnson's deposition, he said quite clearly that the Chief got out of the car, came around, and that Mr. Johnson showed the videotape to the Chief, flipped open the view screen on his camcorder. He said that the Chief rewound it and the Chief watched about two seconds of the video and then told him he was under arrest. So the Chief did actually have the opportunity to view the videotape before making the arrest, and after viewing it, and Mr. Johnson says that the portion that he was doing that is when the Chief arrested him. But the overarching issue, of course, is that the sine qua non of the Privacy Act is a reasonable expectation of privacy. In essence, what the city of Sequim is asking for you to do is to take a Privacy Act that the Washington courts have specifically said should not be transformed from a shield for the people to a sword against the people, and they're asking you to carve out an exception for police. As justice can be noted, any time the police are out and about talking on their radio or their cell phone or whatever, the city of Sequim wants them to be able to claim that that's a private conversation. They don't seem to be disputing that if they're making an arrest as in Flora or as in private. They're distinguishing a police chief sitting in his car in a parking lot of a park communicating with dispatch while he's doing surveillance, at least under their theory of the case. And, Your Honor, we would analogize that to the public performance of public duties by any other public official. And there are Washington cases dealing with, for example, public meetings, city meetings of that nature. They're carrying out their public duties. Do you know, if we were the Washington State Supreme Court, we could sharpen up our pencils and decide exactly where we think the balance lies and what should be private and what should be public. But in this proceeding, at least on the issue of qualified immunity, we just have to decide if it was reasonably clear to a police officer in that setting. Yes, Your Honor. And, of course, the case law says that the specific issue does not have to have been ruled upon, but merely that the contours of the right are sufficiently defined that a reasonable officer would know it. And, you know, pointing to the, I think the Mojave case, Duran v. Mojave, there's an expectation that the police will know what rights have been established, which I think is what shows the problem with that self-training program. But here we're not asking for the court to extend the Privacy Act. We're not asking for the court to reinterpret the Privacy Act. We're simply trying to hold the police to the fundamental standard that Washington law has set forth on the Privacy Act. If it's public, it's public. If it's private, it's private. All right. Thank you, counsel. Thank you. Johnson v. Squim is submitted. And we'll take a Pittman v. Waddington. And just to remind counsel, it's 10 minutes per side.
judges: Canby, Wardlaw, Gould